UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Respondent,

                                    Case No. 09-cr-20236

v.                                    HON. GERSHWIN A. DRAIN

QUENTON WHITSELL SR.,

           Defendant-Petitioner.

_____/

**OPINION AND ORDER GRANTING PETITIONER'S MOTION FOR RETROACTIVE APPLICATION OF GUIDELINES AND RESENTENCING [#93] AND TO STRIKE SECTIONS A, B FROM GROUND 3 OF THE SECTION 2255 PETITION [#105]; DENYING PETITIONER'S MOTION TO VACATE SENTENCE [#99]**

## I.      INTRODUCTION

On May 21, 2009, Petitioner Quenton Whitsell was arrested, in Detroit, Michigan, for possession of crack cocaine and firearms. The day following his arrest, on May 22, 2009, Petitioner was appointed counsel. On June 4, 2009, Petitioner's counsel suffered a heart attack.

On November 24, 2009, the Court appointed new counsel for Petitioner. After the third appointment of counsel, on June 15, 2010, Petitioner entered a guilty plea. He is presently serving a sentence of 322 months as a result of the guilty plea.

Presently before the Court is Petitioner's Motion to Vacate Sentence [#99]. In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court held that, under particular circumstances, a criminal judgment can be overturned for ineffective assistance of counsel without a showing of prejudice to defendant's case.

Petitioner contends that, under *Cronic*, he was constructively denied counsel during the critical pretrial stage of his case. Petitioner primarily asserts that the Court failed in its duty to ensure his right to counsel following the heart attack of his original attorney. He further argues that his counsel failed to conduct adversarial testing.

For the reasons that follow, the Court finds that Petitioner was not denied counsel. Petitioner's motion is DENIED.

## II.    FACTUAL BACKGROUND

On April 29, 2009, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) utilized a confidential informant to investigate crack cocaine distributors in Detroit. A third party directed the informant to Petitioner, Quenton Whitsell, a crack cocaine supplier. The third party orchestrated the first transaction between Petitioner and the informant for the sale of crack cocaine. At this first transaction, the third party purchased crack cocaine on the informant's behalf. The informant was present when Petitioner sold cocaine to the third party.

After the first transaction, law enforcement officials were able to determine the location of Petitioner's residence. Consequently, ATF agents began to conduct surveillance on the residence. Agents observed two cars at the residence; both cars were registered to Petitioner.

In the second transaction, the informant was able to purchase cocaine directly from Petitioner. The informant successfully engaged in four more direct transactions with Petitioner. Each transaction was covertly videotaped.

On May 21, 2009, ATF agents secured a search warrant for Petitioner's residence. During their search, agents recovered more than 100 grams of crack cocaine and four firearms. Petitioner was present when agents executed the search, and he was arrested on the same day.

On May 22, 2009, attorney, William Swor, was appointed as Petitioner's counsel in the

matter; counsel also entered an appearance with the Court on this date.   On May 27, 2009, Petitioner was indicted on multiple drug counts and on one count of possessing firearms in furtherance of drug trafficking.  Soon thereafter, on June 4, 2009, Swor suffered a heart attack.

On about June 24, 2009, Swor visited Petitioner at the Sanilac County Jail.  During the visit, Swor presented Petitioner with a plea agreement.  On September 28, 2009, at a scheduled pretrial hearing, Petitioner was notified that his case had been reassigned to another judge sitting on the Court.  After the hearing, Petitioner expressed to Swor that he was concerned about what he perceived as a lack of discovery and consultation.  On October 16, 2009, Petitioner forwarded a letter to the Court, acting on his desire to have Swor removed as counsel.

On November 10, 2009, Petitioner attended a meeting with Swor at the federal court building.   At the meeting, Petitioner refused to cooperate with the Government.   Instead Petitioner used the opportunity to speak one-on-one with Swor.  Petitioner urged counsel to investigate the veracity of the search warrant executed on May 21, 2009, and the supporting affidavit that justified the warrant.  Specifically, Petitioner insisted that counsel locate his cell phone records.  Petitioner believed that his cell phone records

Following the meeting at the federal courthouse, Petitioner submitted a third letter to the Court requesting removal of counsel.[1]  On November 24, 2009, the Court granted Petitioner's request. The Court appointed William Winters as new counsel for Petitioner.  On January 21, 2010, Winters filed a motion to suppress the crack cocaine and firearms recovered from the search of Petitioner's home.  On March 12, 2010, the Court denied Petitioner's suppression motion.  Dissatisfied with Winters, the Court granted counsel's motion to withdraw, on May 4, 2010.

---

[1] Petitioner sent a second, handwritten letter to the Court requesting new counsel after his mother failed to reach Swor after repeated phone call attempts.

For more than one month, Petitioner represented himself until June 15, 2010, when the Court appointed attorney, Allen Early. Early was Petitioner's third court-appointed attorney. On June 17, 2010, Early filed an appearance with the Court.

On July 21, 2010, Petitioner entered a guilty plea for possession with intent to distribute more than 50 grams of cocaine base. Petitioner was sentenced to 322 months imprisonment, on December 17, 2010.

On January 18, 2011, Petitioner, proceeding *pro se*, filed a Notice of Appeal. Subsequently, Early was granted permission to withdraw as counsel. The Court then appointed J. Patten Brown III as appellate counsel.

On May 20, 2011, Petitioner e-mailed Brown. In the e-mail, Petitioner informed Brown about Swor's heart attack. He also attested to the lack of investigation and adversarial testing that he believed he had experienced as a result of Swor's heart attack. He instructed Brown to raise the issue on direct appeal.

On May 31, 2011, Petitioner received an e-mail from Brown in response to his May 20 e-mail. Brown informed Petitioner that he would not raise an ineffective assistance of counsel issue on direct appeal. Brown explained to Petitioner that the effect of Swor's medical condition on his case could only be raised in a Section 2255 petition after a direct appeal. On September 26, 2011, Brown submitted the issues for direct appeal without raising a denial of counsel claim.

## III. LAW AND ANALYSIS

### A. Legal Standard

#### 1. Section 2255 Habeas Relief

Title 28 U.S.C. Section 2255 permits a prisoner in federal custody to challenge the legality of his detention. *See Wooten v. Cauley*, 677 F.3d 303, 306 (6th Cir. 2012). A federal prisoner

may do this by filing a motion with the imposing court, seeking to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  To prevail on a Section 2255 motion for constitutional error, the petitioner must show that the error had a substantial and injurious effect or influence on the proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005).   The "substantial and injurious effect" standard is in essence an assessment of the prejudicial impact of the constitutional violation.   *See McCary v. Lewis*, 255 F. App'x 78, 79 (6th Cir. 2007) (citing *Fly v. Pliler*, 551 U.S. 112 (2007)).

"An ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255."  *Massaro v. United States*, 538 U.S. 500, 500 (2003).  The claim may be brought "whether or not the petitioner could have raised the claim on direct appeal."  *Id.*

### 2.   Ineffective Assistance of Counsel—General Principles

The Supreme Court has held that "[a]n accused's right to be represented by counsel is a fundamental component of our criminal justice system."  *United States v. Cronic*, 466 U.S. 648, 654 (1984).   Therefore, a criminal judgment may be overturned if the defendant has suffered an ineffective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 684 (1984).

A defendant can demonstrate ineffective assistance of counsel using one of two standards: *Strickland* or *Cronic*.   In demonstrating an ineffective assistance of counsel claim under *Strickland*, the defendant is first required to show that counsel's performance was deficient.   *Id.* at 687.   At this step, defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."  *Id.* (internal quotation marks omitted).

5

The defendant must also show that the deficient performance prejudiced the defense. *Id.* This inquiry requires the defendant to demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

The Supreme Court affected a more powerful standard in *Cronic*, which was decided the same day as *Strickland*. *Cronic* holds that a complete absence of counsel is "so likely to prejudice the defendant that a reviewing court need not examine the consequences of the lawyer's conduct." *Mitchell v. Mason*, 325 F.3d 732, 748 (6th Cir. 2003) (citing *Cronic*, 466 U.S. at 759).

*Cronic* prescribes three sets of exceptional factual circumstances that trigger a *per se* presumption of prejudice. *Mitchell*, 325 F.3d at 742. First, *Cronic* held that the complete denial of counsel is so likely to prejudice the accused that "the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658-59. Consequently, no showing of prejudice is required if the defendant is completely denied counsel at a critical stage of his trial; instead, prejudice is presumed. *Id.* at 659; *see also Fuller v. Sherry*, 405 F. App'x 980, 985 (6th Cir. 2010). A "critical stage" is one that holds "significant consequences for the accused." *Woods*, No. 14-618, slip op. at 3 (citing *Bell v. Cone*, 535 U.S. 685, 696 (2002)).

Second, no showing of prejudice is required if defense counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* "The core purpose of the counsel guarantee was to assure '[a]ssistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." *Id.* at 654 (citing *United States v. Ash*, 413 U.S. 300, 309 (1973)). If no actual "[a]ssistance for the accused's defen[s]e is provided, then the constitutional guarantee has been violated. *Id.* (internal quotation marks

omitted).  Consequently, the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." *Id.* at 656 (quoting *Anders v. California*, 386 U.S. 738, 743 (1967)).

Finally, a presumption of prejudice exists on some occasions even when counsel is available to assist the accused during trial.  *Cronic*, 466 U.S. at 660 (citing *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  In such a case, "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."  *Id.*

"The burden rests on the accused to demonstrate a constitutional violation" for an ineffective assistance of counsel claim because courts presume that the lawyer is competent.  *Id.* at 657.  Moreover, "when reviewing an ineffective-assistance-of-counsel claim, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Woods v. Donald*, No. 14-618, slip op. at 3 (Mar. 30, 2015) (per curiam) (quoting *Strickland*, 466 U.S. at 689).

### B.  Discussion

Petitioner strongly contends that *Cronic* governs this matter and eschews the application of *Strickland*.  He challenges his conviction and criminal sentence based on a constructive denial of counsel claim solely under *Cronic*.  Reply to Gov.'s Resp. to Pet'r's Mot. to Vacate, 1 ("Mr. Whitsell is not raising a *Strickland* claim, he is raising a *Cronic* claim.").  Petitioner further asserts that only the first and second categories of *Cronic* apply to this case.

Petitioner's first court-appointed counsel suffered a heart attack early in the proceedings. Petitioner now contends that counsel was therefore functionally absent during the critical pretrial phase of his case.  Petitioner also contends that his original defense counsel failed to subject the prosecution to meaningful adversarial testing.  For the remainder of his criminal defense,

Petitioner argues that each of his court-appointed counsel failed to provide him effective counsel under the *Cronic* standard.

Petitioner, however, has failed to demonstrate that he suffered a constructive denial of counsel under *Cronic*.  As an initial matter, the *Cronic* presumption is applied sparingly. Application of *Cronic* is limited to "particularly egregious" circumstances.  *Fuller*, 405 F. App'x 980, 981 (6th Cir. 2010).  In addition, "the presumption is a 'narrow exception' to the actual prejudice requirement under *Strickland*."  *Zimmerman v. Davis*, No. 03-60173, 2011 WL 1233357, at *3 (E.D. Mich. Mar. 30, 2011).  "To fall within the exception, 'the attorney's failure must be complete.'"  *Id.*  In other words, the presumption is "reserved for situations in which counsel has entirely failed to function as the client's advocate."  *Florida v. Nixon*, 543 U.S. 175, 189 (2004).  Accordingly, *Cronic* should be applied infrequently.  *Id.*

Petitioner brings forth four separate grounds for absence of counsel: trial attorneys (1) Swor, (2) Winters, (3) Early, and (4) his appellate counsel, Brown.  The Court finds that Petitioner's attempt to establish that each counselor was constructively denied or was absent fails.  The Court addresses each of Petitioner's arguments in turn.

### 1. Petitioner was not constructively denied the effective assistance of counsel at a critical stage of his trial.

Petitioner asserts that Swor was functionally absent during the critical pretrial phase of his case.  Petitioner points out that defense counsel was appointed on May 22, 2009.  On June 4, 2009, defense counsel suffered a heart attack.  Petitioner contends that, for this reason, the Court's refusal to appoint new counsel amounted to a denial of counsel for six to seven months of the pretrial phase. Specifically, Petitioner argues that the Court should have appointed counsel as early as June 4, 2009, the date of counsel's heart attack.  Swor suffered a heart attack— approximately two weeks after his appointment as Petitioner's counsel and days following

8

Petitioner's indictment.

Petitioner further suggests that once Swor suffered a heart attack, his absence was ongoing. To support this argument, Petitioner points out that on September 28, 2009, Swor attended a pretrial hearing with Petitioner when Petitioner expressed his concerns to counsel about a lack of discovery and consultation. He then asserts that on October 16, 2009, he sent his first letter to the Court requesting new counsel. Petitioner sent two additional letters to the court over a nearly six-week period requesting new counsel. In the letters, Petitioner contended that counsel was failing to consult and pursue certain defenses on his behalf. While Petitioner eventually received new counsel, he highlights that the Court did not appoint new counsel until November 24, 2009. In other words, Petitioner emphasizes that new counsel was appointed approximately six months after counsel's heart attack. Petitioner contends that this series of events demonstrates that his case suffered from a constructive denial of counsel for *Cronic* purposes. The Court, however, finds that Swor's shortcomings were not "so deficient" as to warrant a finding of *per* se prejudice. *See Ivory v. Jackson*, 509 F.3d 284, 294-95 (6th Cir. 2007).

The Sixth Circuit has emphasized that while "[a]ssistance begins with the appointment of counsel, it does not end there." *Mitchell*, 325 U.S. at 744; *see also Beasley v. United States*, 491 F.2d 687, 692 (6th Cir. 1974) (citing *Avery v. Alabama*, 308 U.S. 444, 446 (1940)) ("The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."). The Sixth Amendment requires "more than a pro forma encounter between the accused and his counsel[.]" *Id.* It requires counsel to act as the defendant's advocate. *See id.*; *see also Cronic*, 466 U.S. at 655-56. Accordingly, the Court "may presume that a defendant has suffered unconstitutional prejudice if he 'is denied counsel at a critical stage of his trial.'"

*Woods*, No. 14-618, slip op. at 3 (quoting *Strickland*, 466 U.S. at 659).

In a constructive denial of counsel case, the Court must first determine whether Petitioner appropriately alleges that ineffective counsel occurred at a "critical stage" of the proceedings. "The critical stage[s] at which counsel must be present are not limited to formal appearances before a judge." *Mitchell*, 325 F.3d at 743 (citing *Perry v. Leeke*, 488 U.S. 272, 281 (1989)). A "critical stage" is one that holds "significant consequences for the accused." *Woods*, No. 14-618, slip op. at 3 (citing *Bell v. Cone*, 535 U.S. 685, 696 (2002)).

The pretrial stage of criminal proceedings is indeed a critical period of the case. *Id.* at 742; *see also Bell v. Cone*, 535 U.S. 685 (2002). In fact, in *Powell v. Alabama*, the Supreme Court stated that the pretrial period is "'perhaps the most critical period of the proceedings … that is to say, from the time of their arraignment until the beginning of their trial….'" *Id.* at 743 (citing 287 U.S. at 57). The pre-trial period "encompasses counsel's constitutionally imposed duty to investigate the case." *Id.* Counsel's purported absence began on June 4, 2009, subsequent to Petitioner's May 27, 2009 arraignment. Likewise, counsel's purported absence occurred long before he entered a guilty plea on July 21, 2010. As a result, Petitioner properly alleges that counsel's purported absence took place during the critical pretrial stage.

Establishing that counsel suffered a medical emergency at some point during the critical pretrial stage is insufficient to apprise oneself of the *Cronic* presumption. The factual circumstances that trigger a *Cronic* analysis are "'very narrow and [are] rarely applicable.'" *Zimmerman*, No. 03-60173, 2014 WL 1233357, at *3. Counsel's conduct has to be so completely inappropriate as to render it "so bad that Petitioner's counsel was not functioning as a lawyer at all." *Id.*; *see, e.g.*, *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984) ("The decision of Martin's attorney not to participate [in providing a defense at all] cannot be considered 'sound

trial strategy' or 'professionally competent assistance.'  Trial counsel stated before the District Court that he refused to participate in Martin's trial because he felt that participation would either waive pretrial motions or render their denial harmless error."); *Rickman v. Bell*, 131 F.3d 1150, 1156-60 (6th Cir. 1997) (whereby counsel expressed contempt and "unmistakable personal antagonism" toward the client in the jury's presence).

While Petitioner's constructive denial of counsel claims is colorable, it ultimately lacks merit.  Swor's conduct lacks the egregiousness that notoriously dictates application of the *Cronic* presumption.  *See, e.g., Mitchell*, 325 F.3d at 742 ("[Defense] counsel [was] suspended from the practice of law for the month immediately preceding trial, [and] … also met with [him] for no more than six minutes over the seven-month period before trial….").

Petitioner contends that the Court's late appointment of new counsel to replace Swor arose to a complete absence of counsel during the critical pretrial stage.  As an initial matter, the Court finds that Petitioner's second appointment of counsel was not tardy.

Following his heart attack, counsel promptly returned to his duties.  In fact, a mere 20 days after his medical emergency, counsel met with Petitioner to discuss a plea agreement that he had been negotiating with the Government.  *Cf. Mitchell*, 325 F.3d at 747 ("The fact that [defendant's] counsel was suspended from the practice of law for the thirty days prior to trial does not decide this case….").  Counsel's demonstrated ability to perform his job duties subsequent to his heart attack did not necessitate the appointment of new counsel.   Therefore, the Court rejects Petitioner's ineffective assistance of counsel claim on this ground.

Moreover, even if appointment of counsel was belated, "no presumption of prejudice arises from the late appointment of counsel."  *Jones v. Parke*, 734 F.2d 1142, 1146 (6th Cir. 1984).  The Supreme Court has declined "'to fashion a *per se* rule requiring reversal of every

11

conviction following tardy appointment of counsel.'"   *Cronic*, 466 U.S. at 660 (quoting *Chambers v. Maroney*, 399 U.S. 42, 54 (1970)).   Surrounding circumstances must justify a presumption of ineffectiveness "without inquiry into counsel's actual performance…"  *Id.*

Petitioner has failed to describe any surrounding circumstances that would justify a presumption of ineffectiveness.  *See id.*  Petitioner concludes that counsel's heart attack and his subsequent six- to seven-month absence consequently deprived him of his ability to assert a violation of his constitutional rights.  The Court concludes differently.

In *Mitchell*, for example, the Sixth Circuit found counsel's representation particularly egregious.  *See* 325 F.3d at 741.  There, the court held that the "approximately six minutes spanning three separate meetings in the bullpen, when viewed in light of [counsel's] month-long suspension from practice immediately prior to trial constituted a complete denial of counsel at a critical stage[.]"  *Id.*

Here, Petitioner asserts that counsel was absent for the entirety of the six to seven months that the pretrial stage took place.  The Court first notes that this characterization of counsel's representation is false.  Counsel was not absent for a six- to seven-month period following his heart attack.  To the contrary, as the Government has demonstrated, "counsel was [n]either totally absent, [n]or prevented from assisting the accused during a critical stage of the proceedings."  *Wood*, No. 14-618, slip op. at 5.  During the critical pretrial stage from arraignment until counsel's withdrawal, *see Mitchell*, 325 F.3d at 743, the record shows that counsel actively represented Petitioner both prior and subsequent to counsel's medical emergency.  For example, counsel continued to represent Petitioner at court hearings and at meetings with the Government.

Petitioner's perception of a lack of communication with Swor does not amount to a

complete denial of counsel.  To reiterate, a total absence of counsel must be shown in order to benefit from the *Cronic* presumption.   *See Mitchell*, 325 F.3d at 744 (where "counsel utterly failed his client during the pre-trial period").

Petitioner fails to understand that "not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983).  Petitioner met with counsel on several occasions to discuss trial strategy and defenses.  Swor and Swor's associate consulted with Petitioner at Sanilac County Jail to discuss his case.  In addition, Swor accompanied Petitioner at court hearings, including Petitioner's arraignment and a pretrial hearing.  Swor further consulted with Petitioner about his concerns prior to and before these proceedings, and even negotiated a plea agreement with the Government on Petitioner's behalf.

Counsel also sent correspondence to Petitioner that was pertinent to his defense.  This correspondence included lab reports, the search warrant of his residence, and the warrant's supporting affidavits.  Counsel's behavior does not meet the level of egregiousness that necessitates the *Cronic* presumption.  *Mitchell*, 325 F.3d at 741.  For this reason, the Court finds that counsel's representation was constitutionally adequate.  *Cf. id.* at 745 (with the defendant testifying that "I have been locked up for 5 months and not once have my lawyer took time out to talk to me ….3 times I went to court my lawyer has told me that he would be over to talk to me, but never did.").

Counsel's representation in this case does not fit the "very narrow" and "rarely applicable" circumstances that trigger the *Cronic* presumption.  As in *Ward v. Lafler*, "petitioner does not allege that counsel failed to meet with him at all," only that counsel failed to meet with him upon request.  No. 08-12788, 2011 WL 4595992, at *9 (E.D. Mich. 2011).  It is clear that

Petitioner was unable to communicate with Swor to the extent that he desired. Petitioner's representation, however, did not rise to the standard of conduct sufficient to warrant a presumption of prejudice. Consequently, Petitioner was not utterly without counsel at the critical pretrial stage of his case, and thus, the *Cronic* presumption does not apply.

### 2. Petitioner's counsel did not fail in their duty to subject the prosecution to meaningful adversarial testing.

#### a. Trial Attorney Swor

Petitioner has failed to demonstrate that counsel did not "function in any meaningful sense as the Government's adversary." *See Cronic*, 466 U.S. at 667. Petitioner argues that Swor failed to investigate and pursue a particular defense theory. He theorizes that ATF agents conducted an unlawful search of his home.

Specifically, Petitioner contends that the affidavit used to justify the search warrant of his residence contained false information. He asserts that the affidavit contained statements that Petitioner was observed departing his residence immediately after making arrangements with the confidential informant to distribute drugs. Petitioner contends, however, that the statements concerning his whereabouts were false. He instead asserts that because he was working at another location from 6 a.m. until 4 p.m., he could not have possibly been seen leaving his residence on the dates[2] stated in the affidavit. Petitioner contends that without the false contents in the affidavit, the probable cause required to obtain the warrant would not have existed.

Petitioner further argues that counsel's failure to suppress the evidence resulting from the search amounts to a complete failure to conduct adversarial testing. Petitioner asserts that he urged counsel to locate his cellular phone records for the month of May 2009. He contends that his cellular phone records would establish his whereabouts for times when ATF agents assert that

---

[2] The dates include May 6, 2009; May 7, 2009; May 13, 2009; May 15, 2009; and May 19, 2009.

they were conducting surveillance on his residence.  Petitioner concludes that counsel's failure to pursue his phone records resulted in an irretrievable loss of defenses, alibis, and witnesses.

Petitioner admits that Swor arranged for one of his associates to consult with him about this defense.   Petitioner contends, however, that counsel's ultimate failure to pursue this line of defense constitutes ineffective assistance of counsel.

The Sixth Circuit has recognized that "'[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'"  *Mitchell*, 325 F.3d at 743 (quoting *Strickland*, 466 U.S. at 691).   The reasonableness of counsel's investigative actions, however, "may be determined or substantially influenced by the defendant's own statements or actions."  *Id.*

In *Strickland*, the Supreme Court found, "what investigation decisions are reasonable depends critically on such information [provided by defendant]."  *Id.*  The Court further stated that based on the information provided by defendant, "the need for further investigation may be considerably diminished or eliminated altogether."  *Id.*  Therefore, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable…."  *Id.*

In order for defense counsel to fulfill his duty to investigate, pre-trial consultation with the defendant must take place.  *Id.*  Counsel, therefore, cannot discharge the duty to investigate if he fails to consult with his client.  *Id.*

Accordingly, the Court holds that Petitioner's counsel did not fail in his duty to conduct adversarial testing.   Counsel participated in mounting Petitioner's defense, which included ongoing consultation and limiting Petitioner's exposure to a lengthier sentence.  Swor's actions

in pursuit of Petitioner's defense, therefore, satisfies the constitutional standard.

First of all, counsel reasonably pursued Petitioner's defense. "Counsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland*, 466 U.S. at 688). The Court is reminded, however, that "[c]ounsel's competence is presumed, and the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Id.* (citation omitted). Furthermore, "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Id.* (citing *Strickland*, 466 U.S. at 689). Relying on this standard, the Court finds that Petitioner has not demonstrated that his counsel's representation was unreasonable.

Applying a "heavy measure of deference to counsel's judgments," the Court finds Swor's actions to be constitutionally sufficient. The testing process functioned normally as it should; counsel performed reasonable investigation into the prosecution's case. *See id.* Swor and his associate consulted with Petitioner at Sanilac County Jail about his proposed defense strategy. In addition, Swor accompanied Petitioner at all court hearings. Before and after the court hearings, Swor consulted with Petitioner about ways to advance his case. It is thus clear that counsel made reasonable decisions based on information that Petitioner provided. *See Mitchell*, 325 F.3d at 743 (quoting *Strickland*, 466 U.S. at 691).

In addition, Swor sent correspondence to Petitioner that was pertinent to his defense. Counsel sent items such as lab reports, search warrants, and supporting affidavits. As a result, the record supports the finding that counsel sufficiently consulted with Petitioner about defense strategy.

Counsel also negotiated a plea agreement with the Government on Petitioner's behalf. Petitioner eventually entered a guilty plea, which minimized his term of imprisonment.   It is thus evident that Petitioner's counsel pursued adversarial testing of the prosecution.   Petitioner's contention that Swor should have independently investigated his cell phone records does not alter this analysis.  *See Moss v. Hofbauer*, 286 F.3d 851, 866 (6th Cir. 2002).

Moreover, counsel's failure to obtain Petitioner's cell phone records does not constitute a failure to conduct adversarial testing.  Petitioner overlooks counsel's efforts to pursue his theory that the search warrant was unlawful.  In October 2009, for example, Petitioner met with Swor's associate at Sanilac County Jail to consult with him regarding this defense.   Some pre-trial consultation with Petitioner, thus, indeed occurred.  *See id.*  Petitioner asserts that the objective of this meeting was to gather information about the unlawful warrant defense.  While Petitioner remains displeased at the frequency of counsel's communication, his contention that counsel failed to mount an investigation regarding this defense is misguided.  However, even if counsel failed to advance this particular defense, counsel perhaps did so because information provided by defendant may have diminished or eliminated the need for further investigation.  *See Mitchell*, 325 F.3d at 743 (quoting *Strickland*, 466 U.S. at 691).

Petitioner incorrectly concludes that counsel's purported failure to pursue this single line defense constitutes a complete failure to conduct adversarial testing.  In this case, counsel's failure to pursue this defense to the end then "must be evaluated under the circumstances [he] faced and in light of [his] [defense] strategy."  *Moss*, 286 F.3d at 867.  While Petitioner argues that cell phone data could indicate his whereabouts, the strength of this argument is weak.  It is rather easy to speculate why counsel may have thought the argument was a weak one.  The basic utility of a cell phone is its mobility.  A cell phone's geographical location is not necessarily

indicative of its owner's whereabouts.

Presuming that plea negotiations and other confidential information rendered pursuing this defense fruitless, Swor's pretrial contact demonstrates that counsel engaged in sufficient adversarial testing of this particular defense. Petitioner's contention that counsel should have further investigated the defense, and, in particular, that counsel should have recovered his cellular phone records does not amount to ineffective assistance of counsel. Furthermore, concluding that counsel's performance in this respect was deficient would perhaps constitute impermissible second-guessing of his decision not to pursue Petitioner's cell phone records. *See Moss*, 286 F.3d at 867. In sum, Petitioner cannot base his ineffective assistance of counsel claim on counsel's failure to challenge the search warrant executed on his residence. Counsel cannot be held responsible for his failure to pursue a single line of defense, especially in light of reasonable consultation with Petitioner regarding defense strategy.

As a final matter, while counsel was not obligated to pursue every line of defense that Petitioner dictated, his second attorney, Winters, did in fact pursue the suppression motion. Albeit, Winters pursued this defense without Petitioner's cell phone records. The Court subsequently denied the motion. Winters' actions further relieve Swor from being held accountable for failure to conduct adversarial testing on the theory that Petitioner now puts forth. Petitioner was ultimately able to pursue his suppression motion. His counsel, as a general matter, was therefore engaged in adversarial testing of the prosecution's case.

### b. Trial Attorney Winters

Winters did not fail in his duty to subject the prosecution to meaningful adversarial testing. Petitioner contends that Petitioner failed to conduct adversarial testing. He specifically asserts that Winters failed to file a motion for dismissal of the indictment as well as the case.

Petitioner additionally asserts that Winters failed to investigate and secure alibi witnesses and evidence for his defense.  Lastly, he again asserts that failure of counsel to secure his cell phone records was fatal to his case.

To reiterate, the *Cronic* presumption applies only if there exists a complete or total failure to provide a defense.  *See Benge v. Johnson*, 474 F.3d 236, 247 (6th Cir. 2007).  Furthermore, "[w]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable…."  *Mitchell*, 325 F.3d at 743.  Counsel, however, cannot discharge the duty to investigate if he fails to consult with his client.  *Id.*

As mentioned above, counsel must wholly fail to participate in adversarial testing for Petitioner to benefit from the *Cronic* presumption.  Petitioner contends that if Winters filed the motions to dismiss, the pretrial stage would have proceeded differently.  This argument has very little value.  It is more likely that the proceedings would have been different if counsel succeeded on these motions.  This proposition, however, is utterly speculative.

In addition, Winters' failure to fully pursue a single investigatory lead does not demonstrate a failure to provide a defense.   Winters fairly consulted with Petitioner.  Petitioner admits that Winters reviewed discovery evidence such as lab reports; on December 30, 2009, counsel consulted with Petitioner concerning this evidence.  Counsel, however, did not proceed with motions to dismiss the indictment or the case.  It is important to note that an evidentiary hearing may provide more information concerning Winters' strategy.  The Court, however, will remain deferential to Winters' strategy for pursuing that defense.

Finally, adhering to Petitioner's wishes, counsel filed a motion to suppress evidence based on search warrants that Petitioner believed to contain falsities.  Based on this information,

counsel did not entirely fail to engage in adversarial testing of the prosecution's case, as is the standard. Winters, therefore, discharged his duty to pursue Petitioner's defense.

### c. Trial Attorney Early

Allen Early, Petitioner's third court-appointed counsel, did not fail to conduct adversarial testing. Petitioner argues that Early failed in his duty when he failed to file a motion to dismiss the indictment.

Denial of effective counsel does not occur each time an attorney does not pursue a line of defense that Petitioner conjures up. *See Mitchell*, 325 F.3d at 743. Counsel's primary obligation is to consult with his client in order to determine a strategy worthwhile.

Petitioner admits that he consulted with counsel about what he perceived were the failings of his first counsel, Swor. In this consultation, Petitioner noted his desire to pursue a dismissal of the indictment. Early did not pursue this line of defense. However, this does not mean that Early failed to conduct adversarial testing.

Early was Petitioner's third court-appointed counsel to decline to pursue dismissal of the indictment. This is a clear indication that the defense was a futile one. Petitioner states no other grounds for ineffective assistance of counsel relating to Early's conduct. Accordingly, the Court finds that Early properly conduct adversarial testing.

### d. Appellate Attorney Brown

Brown did not fail in his duty to subject the prosecution to meaningful adversarial testing. Petitioner argues that Brown failed in his duties when he refused to raise an ineffective assistance counsel issue on direct appeal. As described in the "Facts" section above:

> On May 20, 2011, Petitioner e-mailed Brown. In the e-mail, Petitioner informed Brown about Swor's heart attack. He also attested to the lack of investigation that he and adversarial testing that I believed he had experienced, resulting from Swor's heart attack. He instructed Brown to raise

the issue on direct appeal.  On May 31, 2011, Petitioner received an e-mail from Brown in response to his May 20 e-mail.  Brown informed Petitioner that he would not raise an ineffective assistance of counsel issue on direct appeal.  Brown explained to Petitioner that the effect of Swor's medical condition on his case could only be raised in a Section 2255 petition after a direct appeal.  On September 26, 2011, Brown submitted the issues for direct appeal without raising a denial of counsel claim.

Counsel's refusal to raise an issue on appeal constitutes ineffective assistance "only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007) (citing *Howard v. Bouchard, 405 F.3d 459, 478 (6th Cir. 2005))*.  "Whether raising the issue might have changed the result of the appeal, in turn, goes to the merits of the claim itself." *Id.*  Accordingly, the Court is required to review the merits of ineffective assistance of counsel claims relating to Swor, Winters, and Early.

The Court has reviewed the merits of each of Petitioner's ineffective assistance of counsel claims.  For the reasons enumerated above, the Court has found that each claim lacks merit.  The Court finally notes that "the Sixth Amendment guarantees only *adequate* assistance by counsel.  It does not guarantee exemplary, or even good, counsel." *Ward v. Lafler*, No. 08-12788, 2011 WL 4595992, at *19 (E.D. Mich. 2011) (emphasis added).  Neither independently nor collectively was Petitioner denied effective assistance of counsel under *Cronic*.  Consequently, Petitioner's ineffective counsel claim concerning Brown also fails.

### 3. Petitioner's Motion for Retroactive Application of Guidelines and Resentencing

Petitioner requests that the Court reduce his sentence.  Petitioner's sentence was imposed on December 17, 2010.  Subsequently, the Fair Sentencing Act was amended.  The amended guidelines would consequently reduce Petitioner's pending sentence.

The Government does not dispute Petitioner's motion.  Accordingly, the Court will

conduct a re-sentencing hearing on June 9, 2015.

      **4.  Petitioner's Motion to Strike Sections A and B from Ground 3 of Section 2255 Petition**

Petitioner requests that the Court strike his grounds for ineffective assistance of counsel relating to attorney, Allen Early, on two of the three grounds. He asserts that the grounds are unnecessary. The Government does not dispute this motion. Consequently, Petitioner's Motion to Strike Sections A and B from Ground 3 of Petitioner's Section 2255 Petition [#105] is granted.

## VI.   CONCLUSION

For the reasons outlined above, Petitioner's Motion for Retroactive Application of Guidelines and Resentencing [#93] is **GRANTED**. Petitioner's Motion to Vacate Sentence [#99] is **DENIED**. Petitioner's Motion to Strike Sections A and B from Ground 3 of Petitioner's Section 2255 Petition [#105] is **GRANTED**.

      **SO ORDERED**.

Dated: April 23, 2015

                    /s/Gershwin A Drain
                    HONORABLE GERSHWIN A. DRAIN
                    UNITED STATES DISTRICT JUDGE