UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

QUENTON THOMAS WHITSELL, SR.,

Defendant.

Case No. 09-cr-20236

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE [#153, #159]

### I. INTRODUCTION

On July 21, 2010, Defendant Quenton Thomas Whitsell, Sr. ("Defendant") entered a guilty plea for possession with intent to distribute cocaine base (Count III) and possession of a firearm in furtherance of a drug trafficking crime (Count IV). ECF No. 63.  Defendant was sentenced to 262 months for Count III and 60 months for Count IV, to run consecutively.  ECF No. 76.  On June 16, 2015 this Court reduced Defendant's sentence to 216 months.[1]  ECF No. 131.

_____

[1] This matter was reassigned to this Court on August 14, 2014.  ECF No. 106.

Presently before the Court is Defendant's Emergency Motion for Compassionate Release, filed on May 29, 2020.[2]  ECF No. 153.  Following this Court's Order on May 29, 2020, Defendant's counsel submitted a supplemental brief on that same day.  ECF No. 159.  The Government filed a Response on June 17, 2020.  ECF No. 163.  Defendant filed his Reply on June 25, 2020.  ECF No. 165.

Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter.  Accordingly, the Court will resolve Defendant's Motion for Compassionate Release on the briefs.  *See* E.D. Mich. L.R. 7.1(f)(2).    For the reasons set forth below, the Court will **DENY** Defendant's Motion for Compassionate Release [#153, #159].  Further, the Court will **DENY** Defendant's request that he be transferred to home confinement to serve the remaining 18% of his sentence.

## II. BACKGROUND

Between April 29, 2009 through May 19, 2009, Defendant distributed crack cocaine to confidential informants working with agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).  ECF No. 63, PageID.443.  On May 21, 2009, Defendant was taken into custody for possession of crack cocaine and firearms.  ECF No. 159, PageID.1312.  He entered a guilty plea to two crimes

---

[2] Defendant initially filed two *pro se* motions prior to retaining counsel.  ECF Nos. 153, 160.  Defendant subsequently withdrew his second *pro se* motion, ECF No. 160, and, through counsel, replaced it, ECF No. 159.

charged in the superseding indictment: possession with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c).  ECF No. 63.

On December 17, 2011, Defendant was sentenced to 262 months for Count III and 60 months for Count IV, to run consecutively.  ECF No. 76.  On January 7, 2013, Defendant filed a Motion to Vacate Sentence.  ECF No. 99.  The Honorable Stephen J. Murphy, III denied Defendant's Motion on April 23, 2015.  ECF No. 126. Thereafter, the Fair Sentencing Act was amended and the guideline sentencing range for Defendant's offense was lowered.  On June 16, 2015, this Court resentenced Defendant to 216 months of imprisonment.  ECF No. 131. On August 16, 2017, Defendant filed a second Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. ECF No. 139.  This Court denied Defendant's Motion on January 8, 2019.  ECF No. 144.

Defendant now moves this Court for an order reducing his sentence and releasing him from prison due to the threat of COVID-19.  Defendant is fifty years old and serving his sentence at FCI Milan in Milan, Michigan.  ECF No. 159, PageID.1312.  He is scheduled to be released on September 9, 2021.  *Id.*  In his instant Motion, Defendant seeks early release from his term of imprisonment by arguing that he has served over four-fifths of his sentence and that he is particularly susceptible to COVID-19.  *Id.* at PageID.1313.  He alleges that he is especially at

risk due to his age and his underlying medical conditions, including prediabetes, Hepatitis C, and obesity. *Id.* at PageID.1323–24.

Further, Defendant argues that the emergent nature of his Motion is amplified by the number of positive cases within FCI Milan. *Id.* at PageID.1313. As of June 25, 2020, ninety-two inmates at FCI Milan have tested positive for COVID-19, three have died, and there are thirteen active cases. Among the staff at FCI Milan, fifty-five have tested positive for COVID-19 and one is pending recovery.

Defendant argues in the alternative that the Court should permit him to complete his remaining sentence in home confinement. *Id.* at PageID.1334. He asserts that he would serve the remainder of his sentence at his aunt's home in Detroit. *Id.*

### III. LAW & ANALYSIS

### A. Compassionate Release Under the First Step Act

### 1. Legal Standard

Title 18 U.S.C. § 3582(c)(1)(A) governs this Court's authority to consider motions for compassionate release. As amended by the First Step Act of 2018, this statute permits judicial modification of an imposed term of imprisonment when a defendant can meet three criteria: (1) the defendant has first exhausted all administrative remedies with the BOP or at least allowed the BOP 30 days to act on his or her request before seeking compassionate release on their own motion; (2)

"extraordinary and compelling reasons" warrant such a sentence reduction; and (3) the sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission and the district court has considered the factors set forth in section 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

U.S. Sentencing Guidelines Manual § 1B1.13 is the "applicable policy statement" which this Court must comply with. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g). Further, a defendant must fit within at least one of four categories of "extraordinary and compelling reasons." "An 'extraordinary and compelling reason' for the reduction can be satisfied in cases where a defendant's medical conditions or overall state of health are such that they cannot be treated effectively or will worsen in a custodial environment." *United States v. Bowman*, No. 11-20188, 2020 WL 3250225, at *1 (E.D. Mich. June 16, 2020).

Under this statute, Defendant must meet the requirements of exhaustion and "extraordinary and compelling reasons" to be eligible for compassionate release. Before granting a motion for compassionate release, district courts must also review the factors set forth in 18 U.S.C. § 3553(a) and determine whether such factors support or undermine the sentence reduction.

## 2. Analysis

### a. Exhaustion

The First Step Act of 2018 amended 18 U.S.C. § 3582 to permit defendants to move for compassionate release themselves.  First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018).  In a defendant-initiated motion for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the BOP or waiting thirty days from when the warden at the facility received his or her request.  18 U.S.C. § 3582(c)(1)(A).

Various district courts, including this Court, have held that the exhaustion requirement may be waived under the unique and rapidly evolving circumstances presented by COVID-19.  *See Untied States v. Alzand*, No. 18-cr-20703, 2020 WL 2781824 (E.D. Mich. May 29, 2020); *Miller v. United States*, No. CR 16-2022201, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020).  These decisions were mindful of a defendant's ability to have quick access to the courts in the midst of a pandemic.  Indeed, COVID-19 is dangerous everywhere, but the novel disease is especially harmful within correctional institutions, where incarcerated individuals have a limited ability to exercise encouraged community practices such as social distancing and frequent handwashing.  *Interim Guidance on Management of*

6

*Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/ 2019-ncov/community/correction-detention/guidance-correctional-detention.html.

The Sixth Circuit recently held, however, that while the administrative exhaustion requirements under § 3582(c)(1)(A) are not jurisdictional, they are mandatory. *United States v. Alam*, 960 F.3d 831, 2020 U.S. App. LEXIS 17321 (6th Cir. 2020).   In *Alam*, the Sixth Circuit rejected defendant's argument that the "unprecedented" nature of the COVID-19 pandemic should serve as an exception to the statute's exhaustion requirement.   *Id.* at *11 (concluding that "[t]hirty days hardly rises to the level of an unreasonable or indefinite timeframe.") (internal quotation marks omitted).

Here, the parties dispute whether Defendant properly exhausted his administrative remedies.  Defendant explains that on April 19, 2020, he submitted his first petition to the BOP requesting home confinement to the Warden at FCI Milan.  ECF No. 159, PageID.1315; ECF No. 153, PageID.1288; ECF No. 163-1, PageID.1480.   Defendant made the same request to manager coordinator, Mr. Barnett, the following day.  ECF No. 159, PageID.1315.  Defendant received notice on April 21, 2020 that his request was denied.   *Id.*   On May 6, Defendant "subsequently submitted an additional request for release."   *Id.*   The Court takes notice that Defendant attached this "additional request" to his second *pro se* motion,

7

which his attorney Mr. Wade Fink has since withdrawn in light of the instant Motion, ECF No. 160, PageID.1451, as well as to his Reply brief, ECF No. 165-1, PageID.1562. This request, unlike the request for home confinement, is titled as a motion for reduction of sentence pursuant 18 U.S.C. § 3582 and BOP Policy Directive § 571.61(a)(1). ECF No. 165-1, PageID.1562.

According to Defendant, others within the prison informed him that the Warden at FCI Milan did not believe in compassionate release and would thus "be summarily rejecting all requests."[3] ECF No. 159, PageID.1315. Defendant thus attempted to file his motion for compassionate release in this Court on or about May 11, 2020. *Id.* This Court received Defendant's *pro se* motion on June 2, 2020. ECF No. 160. The Court previously received and docketed Defendant's first *pro se* Motion for Compassionate Release on May 29, 2020. ECF No. 153. This first *pro se* Motion was dated May 11, 2020—five days after he submitted his "additional request" to the Warden at FCI Milan.

The Government contends that Defendant did not comply with § 3582(c)(1)(A)'s mandatory exhaustion requirement because he failed to make a

_____

[3] In deciding that the administrative exhaustion requirements under § 3582(c)(1)(A) are mandatory, the *Alam* court assumed that there is an available process for an incarcerated individual to seek release from the BOP. Here, Defendant implies that no such process is available at FCI Milan. Given that this argument is not fully developed in the instant Motion, this Court will leave for another day the determination of whether the Warden's alleged procedure to summarily reject all requests renders the administrative process one without relief.

request for compassionate release from the Warden at FCI Milan. ECF No. 163, PageID.1467. It emphasizes that Defendant made a request for home confinement, ECF No. 163-1, which is not synonymous to a request for compassionate release. *Id.* at PageID.1467–68. As described above, Defendant did submit such a motion for compassionate release to the Warden on FCI Milan on May 6, 2020.

The Court agrees more broadly with the Government, however, that Defendant failed to exhaust his administrative remedies. Specifically, Defendant did not wait the requisite thirty days from the date which the Warden at FCI Milan received his petition for early release. He instead filed two *pro se* motions, ECF Nos. 153, 160, within six days of his initial request to the Warden at FCI Milan. Defendant contends in his Reply that exhaustion is not a barrier to his relief, as thirty days from May 6, 2020, the date of his petition to the Warden at FCI Milan, to the date of this Order have since passed. ECF No. 165, PageID.1554. While the Court does not dispute the reality of the time lapse, the Court is unable to ignore the *Alam* court's holding that Defendant must either exhaust all administrative remedies within the BOP—including an initial petition and a pursuit of administrative review—or at least allowing the BOP thirty days to act on his request before seeking compassionate release on his own motion to this Court. *Alam*, 2020 U.S. App. LEXIS 17321, at *11. The Court therefore cannot grant Defendant's requested relief

because he failed to exhaust as required by § 3582. *Alam*, 2020 U.S. App. LEXIS 17321, at *6.

### b. "Extraordinary and Compelling Reasons"

Even had Defendant waited the requisite thirty days and filed the instant motion on June 7, 2020 or thereafter, his request for compassionate release fails on the merits. For a court to grant compassionate release, the defendant must demonstrate that "extraordinary and compelling reasons" exist to warrant a reduction in sentence. 18 U.S.C. § 3582(c). The Sentencing Commission has provided guidance about what constitutes "extraordinary and compelling reasons" in Section 1B1.13 of the Sentencing Guidelines. U.S.S.G. § 1B1.13. These reasons are classified in four categories: (1) the defendant's medical condition; (2) the defendant's age; (3) family circumstances; and (4) additional reasons "other than, or in combination with" the first three elements. *Id.* at cmt. n.1(A)-(D).

Defendant argues that his underlying medical conditions constitute "extraordinary and compelling reasons" for this Court to grant him compassionate release. Specifically, Defendant asserts that he is even more at risk than the general population at FCI Milan to contract COVID-19 due to his age, obesity, Hepatitis C, and recent prediabetes diagnosis. ECF No. 159, PageID.1323. A copy of Defendant's medical records confirm that he is prediabetic, is a carrier of Hepatitis C, and has a BMI of 30. ECF No. 164.

The Court does not diminish Defendant's concern that his underlying medical conditions place him at an increased risk for suffering complications from COVID-19. However, the Court finds that Defendant has not demonstrated that "extraordinary and compelling reasons" exist to warrant his release from FCI Milan. According to the Centers for Disease Control and Prevention ("CDC"), the only relevant condition that places Defendant at a higher risk for severe illness from COVID-19 is his obesity.[4] *People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last updated June 25, 2020).

Defendant's obesity by itself is not sufficient to warrant early release under the compassionate release standard. Defendant is also fifteen years younger than the CDC's classification of adults sixty-five years and older who are at higher risk of COVID-19 complications. Other district courts have granted compassionate release only upon a finding of numerous and severe medical conditions that place them at a significantly higher risk for severe illness from COVID-19. *See, e.g., United States v. Doshi*, No. 13-CR-20349, 2020 WL 2556794 (E.D. Mich. May 20, 2020)

---

[4] The Court takes notice that the time of the parties' briefs, the CDC did not recognize an individual with a BMI of 30 was at an increased risk of severe illness from COVID-19. Indeed, the CDC defined someone as obese with a BMI of 40 or higher. *See* ECF No. 163, PageID.1471.

(granting compassionate release for an elderly inmate with hypertension, diabetes, asthma, hyperlipidemia, and other preexisting conditions); *Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084, at *1 (E.D. Mich. Apr. 9, 2020) ("The CDC also states that individuals with underlying medical conditions, such as a chronic lung disease, a serious heart condition, and liver disease, have a higher risk of severe illness ... Miller suffers from all three.").

Moreover, the Court takes notice that Defendant does not cite to any cases within this District or Circuit to support his argument that his underlying medical conditions fit within the Sentencing Commission's definition of "extraordinary and compelling reasons."  Rather, Defendant provides the Court with a general assertion in his Reply that "district courts across the country have not cabined the compassionate release of inmates to only those who have conditions listed on the CDC's *People at Higher Risk* website[.]"  ECF No. 165, PageID.1555.  Upon consideration of precedent for granting compassionate release and the particular facts of his case, Defendant has not presented extraordinary and compelling circumstances that warrant his early release.

### c. 18 U.S.C. § 3553(a) Factors and Determination of Dangerousness to the Community

The Court must also consider the sentencing factors under 18 U.S.C. § 3553(a) and determine whether such factors support or undermine the sentence reduction.

*See* U.S.S.G. § 1B1.13.  The Court must also determine that Defendant does not present a danger to the community, as provided in 18 U.S.C. § 3142(g).  *See id.*

Here, the Court finds that the § 3553(a) sentencing factors do not favor Defendant's release.  Defendant was convicted of two serious offenses: possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  Defendant has been involved in street-level drug dealing for a large part of his life.  ECF No. 128, PageID.1095 (Def. Sentencing Mem.).  In the instant case, Defendant admitted that he possessed the narcotics obtained by the ATF agents—nearly 200 grams of powder cocaine, over 100 grams of crack cocaine, heroin, and marijuana—and four firearms.  ECF No. 127, PageID.1075–76 (Gov't Sentencing Mem.).  Defendant has an extensive criminal history, including ten prior convictions for firearm and drug offenses between 1988 and 2004.  *Id.* at PageID.1076–77.  In addition to his convictions, Defendant has been arrested eleven times for drug offenses and assaultive behavior.  *Id.* at PageID.1079.

This Court imposed a below-Guideline sentence of 216 months at the time of Defendant's resentencing hearing in June 2015.[5]  ECF No. 131.  At the time of

---

[5] The Government recommended that the Court impose a sentence of 262 months' imprisonment, which was the low-end of the adjusted guideline range in light of the Fair Sentencing Act.  ECF No. 127, PageID.1074.  Defendant requested that the Court impose a sentence of 188 months.  ECF No. 128, PageID.1084.

Defendant's resentencing, the Court took notice that Defendant was convicted of multiple drug and firearm offenses in the past and was arrested in the instant matter within approximately seven months of being discharged from parole. *See* ECF No. 127, PageID.1078–79. The Court finds that granting Defendant compassionate release at this juncture would inappropriately minimize the serious nature of Defendant's drug-trafficking and firearm offenses and would fail to serve deterrence goals.

The Court is also unable to determine that Defendant does not present a danger to the community. Defendant argues that his "exceptional conduct and herculean efforts to better himself while incarcerated" show that he no longer poses a danger to society. ECF No. 159, PageID.1332. He does not dispute that he has a criminal history; instead, Defendant emphasizes that he was a "street level" drug dealer rather than a "massive drug dealer." *Id.* While the Court acknowledges that Defendant has a clean record while incarcerated, and encourages Defendant to continue working towards his degree from Jackson College, it cannot ignore Defendant's multiple convictions for drug and firearm offenses during the last three decades. The seriousness of Defendant's instant drug trafficking and firearm offenses, along with his extensive history of similar criminal behavior, compels this Court to conclude that he would present a danger to the community.

Accordingly, Defendant is not eligible for compassionate release.

**B. Home Confinement under the CARES Act**

Defendant argues in the alternative that this Court should permit him to complete his sentence in home confinement. ECF No. 159, PageID.1334. He suggests that he can serve his sentence at his aunt's home in Detroit—a place "where he would be able to isolate himself and better protect himself from COVID-19[.]" *Id.* at PageID.1334–35. The Government asserts that this Court does not have authority to permit Defendant's request. ECF No. 163, PageID.1475. This Court agrees.

The BOP, not the sentencing court, has exclusive authority to determine a prisoner's place of incarceration. 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment …"). The BOP's decision regarding a prisoner's place of incarceration "is not reviewable by any court." 18 U.S.C. § 3621(b). Moreover, this Court has no new authority under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to order that Defendant serve the remaining 18% of his sentence in home confinement. CARES Act, Pub. L. 116-135, 134 Stat. 281, § 12003(b)(2) (enacted Mar. 27, 2020). This Court thus has no authority to order that Defendant can serve the remainder of his sentence in home confinement. Indeed, several courts in this District have recognized that under the CARES Act, the authority to place a prisoner in home confinement is given exclusively to the BOP, through the Attorney General's delegation. *See, e.g.*, *United*

*States v. Oliver*, No. 17-cr-20489, 2020 WL 2768852, at *3 (E.D. Mich. May 28, 2020) (collecting cases).

In sum, the Court is without jurisdiction to order the BOP to place Defendant on home confinement.  Accordingly, the Court denies Defendant's request.

## V. CONCLUSION

For the reasons articulated above, Defendant's Emergency Motion for Compassionate Release [#153, #159] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's request that he be transferred to home confinement to serve the remaining 18% of his sentence is **DENIED**.

**IT IS SO ORDERED.**

Dated:        July 6, 2020

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 6, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager